(No. 41360.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
TENNIE WEAVER, Appellant.

*Opinion filed Nov. 22, 1968.—Rehearing denied Jan. 28, 1969.*

ROBERT H. JONES, of Peoria, appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and RICHARD STENGEL, State's Attorney, of Rock Island, (JOHN DONALD O'SHEA, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

A jury in the circuit court of Rock Island County found the defendant, Tennie Weaver, guilty of burglary, possession of burglary tools, and theft, and he was sentenced to imprisonment in the penitentiary. On this appeal he attacks the constitutionality of a search of the automobile in which he had ridden to the scene of the alleged crime, contends that one of the three counts of the indictment failed to charge an offense, and challenges the sufficiency of the evidence to establish guilt upon the other two counts—burglary and possession of burglary tools.

While cruising in their patrol car shortly after midnight on July 31, 1967, two officers of the East Moline police department saw two men, the defendant and Jerry York, in a well-lighted self-service laundromat. York was looking out of the front window, and the defendant was at a soft drink vending machine, the door of which was open. The officers knew of recent thefts and vandalism in laundromats located in that area; they drove on, circled, and entered the laundromat a minute or two later. York was still standing at the front window and the defendant had just flushed the toilet in the restroom at the rear of the laundromat. The men told the officers that they had stopped in the laundromat to use a telephone. They were frisked for

weapons, and coins amounting to more than $50 were found in the defendant's pockets.

The defendant's hands were cuffed behind his back and he was placed in the front seat of the police car, where he shifted and squirmed about. York, accompanied by one of the officers, drove his car, which had been parked in front of the laundromat, to the police station. One of the officers, whose suspicions had been aroused by the defendant's squirming movements in the police car, searched the front seat of that car and found a key. The two officers returned to the laundromat and found that the key opened the outer door of the vending machine, although it did not open the coin receptacle. The officers testified that they returned again to the police station to secure a warrant for the search of York's car. The officer in charge of the shift telephoned a judge and was told that a warrant was not necessary. The officers then searched York's car, and found more coins and a plastic bag containing 303 keys, some of which were of the type used to open vending machines, and one of which opened the coin compartment of the machine here in question. Later that morning York's car was turned over to the sheriff, and proceedings for its forfeiture were instituted on the same day.

The defendant testified that he and York had stopped at the laundromat so that York could telephone his wife, and that while York was using the telephone, the defendant went to the restroom. The defendant's former wife, a waitress, testified that shortly before his arrest, he had visited her in the tavern where she worked and that she had given him $40 to $50 in change which she had received as tips. The proprietor of the tavern corroborated her testimony.

The defendant contends that his constitutional rights were violated when his motion to suppress the coins and the bag of keys found in York's car was denied. For this contention he relies upon *Preston* v. *United States* (1964), 376

U.S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881. In our opinion, however, this issue is controlled not by *Preston* but by *Cooper* v. *California* (1967), 386 U.S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788. See also *People* v. *Carter*, 38 Ill.2d 496, 500; *People* v. *Nugara* (1968), 39 Ill.2d 482, *cert.* den. *Nugara* v. *Illinois,* 21 L. Ed. 2d 261.

In our opinion the conduct of the officers was reasonable. When they first saw the suspects, one of them was apparently on guard at the front window while the other was busy with the vending machine. We regard as immaterial the fact that the search of the automobile took place after, rather than before, the suspects were taken to the station. The officers testified that they had radioed for assistance but that "the other squad car was busy." Their judgment that it was advisable to take the suspects to the station in order to prevent escape instead of searching the car at the scene, is not, in our opinion, subject to criticism. In a situation of this kind it is impossible for police officers to do simultaneously everything that needs to be done, and the fact that some steps are necessarily given priority over others does not affect their legality. The search in this case was, in the language of *Cooper* v. *California,* "closely related to the reason petitioner was arrested." (386 U.S. at 61, 17 L. Ed. 2d at 733.) We hold, therefore, that the search of the car was reasonable and did not violate the constitutional rights of the defendant.

The defendant's attack upon the legal sufficiency of count III of the indictment is also phrased in constitutional terms. This count charged that the defendant "committed the offense of felony theft" and it alleged that he had previously been twice convicted of theft of amounts not exceeding $150. In denying his motion to dismiss this count, the trial court directed that evidence of the defendant's prior convictions was not to be introduced at trial. The defendant now contends that the use of the term "felony theft" deprived him of his right to be apprised of the nature

of the accusation against him, because the Criminal Code does not describe any offense as "felony theft." This contention is without merit.

The Criminal Code provides that the first conviction of theft of property not exceeding $150 is punished as a misdemeanor. (See Ill. Rev. Stat. 1967, chap. 38, pars. 2—11, 16—1.) A second or subsequent offense is punished as a felony. (See Ill. Rev. Stat. 1967, chap. 38, pars. 2—7, 16—1.) Since the indictment charged previous thefts, the use of the characterization "felony theft," while not necessary, can hardly be said to have deprived the defendant of his constitutional right "to be advised of the nature and cause of the accusation against him." At worst, the use of the word "felony" is surplusage and we fail to see how defendant was prejudiced by its inclusion.

Similarly, we find no substance to defendant's sweeping contention that "to permit prior convictions to be alleged in the indictment can and did have no other effect than to confound and confuse the defendant in ascertainment of the nature and cause of the accusation against him and to deprive him of his constitutional rights to due process and equal protection of the laws." The indictment clearly sets forth the current charge of theft; the additional information it provided concerning prior convictions informed the defendant of the applicability of the recidivist punishment that the legislature has provided.

The defendant also argues that the State's evidence failed to establish the crime of burglary beyond a reasonable doubt. His position is that since the laundromat was open to the public at the time in question, he could have entered as a business invitee, and that without convincing proof to the contrary, "his presence in the store is as consistent with his innocence as with his guilt of the criminal intent at the time of his entry." While a common-law breaking is no longer an essential element of the crime of burglary (see Committee Comments, S.H.A., chap. 38, par.

19—1; *People* v. *Brown* (1947), 397 Ill. 529), the statute requires an entry which is both without authority and with intent to commit a felony or theft. (Ill. Rev. Stat. 1967, chap. 38, par. 19—1.) A criminal intent formulated after a lawful entry will not satisfy the statute. But authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open. (See *People* v. *Brown*, 397 Ill. 529, 530.) An entry with intent to commit a theft cannot be said to be within the authority granted patrons of a laundromat.

The defendant testified that he entered the building with York, who wanted to make a telephone call. But other evidence justified the jury's disregarding this testimony, and was sufficient to establish, beyond a reasonable doubt, that the defendant entered with an intent to commit a theft. There was an outside telephone available for York to use. Neither man had any laundry, and the jury could have concluded that the evidence established that when the defendant entered the establishment, he had and intended to use the key which opened the door of the vending machine at which the defendant was discovered.

Finally, the defendant urges that his possession of burglary tools was not established beyond a reasonable doubt. The statute defines as such a tool "any key * * * for use in breaking into * * * any depository designed for the safekeeping of property, or any part thereof, with intent to enter any such place and with intent to commit therein a felony or theft * * *." (Ill. Rev. Stat. 1967, chap. 38, par. 19—2.) To show that neither his possession of nor his intent to use such tools was established, the defendant points to his own testimony that he had been in York's car only a short period, that he had seen no keys in the car, and that his strange movements upon being placed in the police car were undertaken in an attempt to alleviate the discomfort of the handcuffs.

Again we find that the State's evidence was sufficient to justify the jury in concluding that all elements of the statutory offense had been established beyond a reasonable doubt. A key had been used to open the door of the vending machine at which the defendant was standing. A key that opened the door of that machine was found in the police car where the defendant had been squirming to the extent of putting one foot on the dashboard. The proof went further and established that a bag of keys suitable for similar purposes was found in the car in which the defendant rode to the laundromat.

The judgment of the circuit court of Rock Island County is affirmed.

*Judgment affirmed.*