Opinion filed December 29, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| RONALD ADLER and LISA ADLER, | ) | Appeal from the Circuit Court |
| | ) | of Kendall County. |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 19-L-31 |
| | ) | |
| BAYVIEW LOAN SERVICING, LLC, | ) | |
| and THE BANK OF NEW YORK | ) | |
| MELLON, | ) | Honorable |
| | ) | Stephen L. Krentz, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court, with opinion.
Justices McLaren and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant the Bank of New York Mellon (BONY), at a prior foreclosure proceeding against plaintiffs, Ronald and Lisa Adler, obtained a judgment of foreclosure and an order confirming the judicial sale of plaintiffs' home. Plaintiffs then filed claims under the Real Estate Settlement Procedures Act of 1974, as amended (RESPA) (12 U.S.C. § 2605 (2012); 12 C.F.R. §§ 1024.36, 1024.41 (2014)) and the Consumer Fraud and Deceptive Business Practices Act (Fraud Act) (815 ILCS 505/2 (West 2014)) alleging that BONY and defendant Bayview Loan Servicing, LLC (Bayview), engaged in misconduct arising out of the foreclosure proceeding. Defendants filed a motion to dismiss under section 2-619 of the Code of Civil Procedure (735

ILCS 5/2-619 (West 2018)) on the grounds that plaintiffs' claims were barred by section 15-1509(c) of the Illinois Mortgage Foreclosure Law (*id.* § 15-1509(c)) and by *res judicata*. The trial court granted defendants' motion to dismiss on both grounds. We affirm on the basis that plaintiffs' claims are barred by section 15-1509(c), and we do not reach the *res judicata* arguments.

¶ 2                                  I. BACKGROUND

¶ 3        In 2005, plaintiffs executed a mortgage loan to purchase a home. The interest in the mortgage was eventually assigned to BONY. After plaintiffs defaulted, BONY filed a foreclosure action in 2010 and obtained a judgment of foreclosure in 2012. In February 2013, plaintiffs filed for Chapter 7 bankruptcy and, in May 2013, obtained a discharge of their obligation, forestalling the sale of their home by BONY.

¶ 4        In October 2013, Bayview acquired servicing rights to the mortgage loan and plaintiffs submitted a loan-modification application to Bayview. In July 2014, plaintiffs submitted a second loan-modification application to Bayview, which approved a "Trial Period Plan" requiring plaintiffs to pay three installments of $2590.93 from September 2014 to November 2014 prior to receiving a permanent loan-modification offer. Plaintiffs timely made the required three payments.

¶ 5        In December 2014, Bayview sent plaintiffs a permanent loan-modification offer that referenced a monthly escrow payment but did not mention plaintiffs' bankruptcy discharge. Plaintiffs requested a breakdown of the proposed monthly payment and the addition of language in the modification offer "to the effect that Bayview will not attempt to re-establish any personal liability for the underlying debt as a result of the bankruptcy discharge."

¶ 6        In April 2015, Bayview sent a letter indicating that the monthly payment amount in its offer included a private mortgage insurance (PMI) premium, property taxes, and hazard insurance.

Bayview also declined to add plaintiffs' requested language to its offer, stating, "Bayview must adhere to the investor guideline and as such, we cannot issue any forgiveness of debt."

¶ 7    Plaintiffs sent a response, again requesting the added language, to which Bayview did not reply. Instead, on August 18, 2015, plaintiffs received a notice that their home was to be sold at a sheriff's sale on September 28, 2015.

¶ 8    On September 8, 2015, plaintiffs filed motions to stay the sale and for leave to file a counterclaim against BONY for breach of contract in the foreclosure court. In their proposed counterclaim, plaintiffs alleged the following: (1) Bayview's Trial Period Plan offer constituted a contract offer, (2) plaintiffs' timely payments under the plan constituted an acceptance, forming a valid contract, (3) plaintiffs attempted to negotiate and clarify terms in Bayview's subsequent permanent loan modification offer, (4) Bayview refused to discuss further the terms of the new offer, and (5) this refusal violated the implied covenants of good faith and fair dealing and constituted a breach of contract. Thus, plaintiffs' proposed counterclaim was premised on charges that Bayview engaged in improper conduct during communications between plaintiffs and Bayview from December 2014 to June 2015 regarding Bayview's permanent loan-modification offer.

¶ 9    As an aside, we note that plaintiffs attempted to file their counterclaim against BONY in the foreclosure proceeding, where Bayview was not a named party. The proposed counterclaim, however, alleged that Bayview breached its contract with plaintiffs. Further, BONY's counsel opposed plaintiffs' motion for leave to file their proposed counterclaim but did not draw a distinction between the legal interests of BONY and Bayview. and both parties are represented jointly by counsel on appeal. We recognize, as do plaintiffs in their pleadings, that Bayview was

acting as BONY's agent during the time period relevant to plaintiffs' RESPA and Fraud Act claims.

¶ 10　　On September 16, 2015, the foreclosure court held a hearing on plaintiffs' motions. Concluding that plaintiffs had become aware of defendants' purported misconduct at least five months before filing their motions, the foreclosure court denied both the request to stay the sale and for leave to file a counterclaim, due to untimeliness. BONY subsequently purchased the home at the judicial sale. The foreclosure court confirmed the sale on November 2, 2015, and BONY was issued a deed on November 6, 2015.

¶ 11　　On September 17, 2017, plaintiffs filed a complaint against BONY and Bayview in the United States District Court for the Northern District of Illinois, alleging defendants violated RESPA and the Fraud Act. Defendants filed a motion to dismiss on the ground that the federal court lacked jurisdiction under the *Rooker-Feldman* doctrine, which prevents a federal court from hearing a claim that is "inextricably intertwined" with a prior state court judgment when "the plaintiff had a reasonable opportunity to raise the issue in state court proceedings." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017). On September 18, 2018, the district court granted defendants' motion to dismiss on the ground that it lacked subject-matter jurisdiction under *Rooker-Feldman*. *Adler v. Bayview Loan Servicing, LLC*, No. 17-c-6735, 2018 WL 4466394, at *4 (N.D. Ill. Sept. 18, 2018). The court based its judgment, in part, on its finding that plaintiffs' claimed injuries resulted from the foreclosure proceedings and that plaintiffs had a reasonable opportunity to bring their claims in the foreclosure proceedings. *Id.*

¶ 12　　On March 18, 2019, plaintiffs filed their complaint in this case in the circuit court. Plaintiffs alleged that defendants violated (1) RESPA by conducting a foreclosure sale without following the act's procedural requirements (12 U.S.C. § 2605(k)(1)(E) (2012); 12 C.F.R. § 1024.41(g)

(2014)), by failing to timely acknowledge receipt of various written information requests (12 U.S.C. § 2605(e)(1) (2012); 12 C.F.R. § 1024.36(a), (c) (2014)), and by failing to timely respond to various written information requests (12 U.S.C. § 2605(e)(2) (2012); 12 C.F.R. § 1024.36(d) (2014)); and (2) the Fraud Act by engaging in various unfair acts while plaintiffs sought a permanent loan-modification offer following their default (815 ILCS 505/2 (West 2014)).

¶ 13    On August 2, 2019, defendants filed a motion to dismiss the complaint on three grounds: (1) the claims were barred by a prior judgment, specifically the vesting of title by delivery of the deed upon the sale of the home (735 ILCS 5/2-619(a)(4), (a)(9), 15-1509(c) (West 2018)); (2) the claims were barred by *res judicata* (*id.* § 2-619(a)(4), (9)); and (3) the claims were barred by the applicable statutes of limitations (*id.* § 2-619(a)(5); 12 U.S.C. § 2614 (2018); 815 ILCS 505/10a(e) (West 2018)). On October 24, 2019, the trial court granted defendants' motion to dismiss on the grounds that plaintiffs' claims were barred by section 15-1509(c) and by *res judicata*. Plaintiffs timely appealed.

¶ 14                                    II. ANALYSIS

¶ 15    Plaintiffs raise several arguments on appeal. First, they argue that the trial court erred by granting the motion to dismiss pursuant to section 15-1509(c) of the Mortgage Foreclosure Law, because that provision bars only claims that challenge the foreclosure judgment or the order confirming the judicial sale in the underlying foreclosure proceeding. Plaintiffs insist that their RESPA and Fraud Act claims did neither. Plaintiffs also argue that the trial court erred by granting the motion to dismiss on *res judicata* grounds and that, alternatively, defendants should be judicially estopped from arguing for the application of *res judicata*. Because we conclude that plaintiffs' claims were barred by section 15-1509(c) and affirm, we do not address the *res judicata* ruling.

¶ 16    We review *de novo* the trial court's dismissal of a complaint under section 2-619 of the Code of Civil Procedure. *Dinerstein v. Evanston Athletic Clubs, Inc.*, 2016 IL App (1st) 153388, ¶ 13. Further, "the court is obligated to construe the pleadings and supporting documents in the light most favorable to the nonmoving party, and to accept as true all well-pleaded facts in the plaintiff's complaint." *Sandler v. Sweet*, 2017 IL App (1st) 163313, ¶ 9. The trial court granted defendants' motion to dismiss pursuant to section 2-619(a)(9) on the ground that the claims were barred by the vesting of title by delivery of the deed under section 15-1509(c) of the Mortgage Foreclosure Law and pursuant to section 2-619(a)(4) on the ground that the claims were barred by *res judicata*.

¶ 17    Initially, we consider whether the trial court erred in concluding that section 15-1509(c) of the Mortgage Foreclosure Law bars plaintiffs' claims. Plaintiffs contend that a commonsense reading of section 15-1509(c) bars only subsequent attacks on the foreclosure judgment. Defendants counter that the plain language of section 15-1509(c), barring "all claims," means exactly what it says. We review *de novo* issues of statutory construction. *Dynak v. Board of Education of Wood Dale School District 7*, 2020 IL 125062, ¶ 15 (plurality opinion).

¶ 18    When interpreting a statute, the court's primary goal is to give effect to the legislature's intent. *Id.* ¶ 16. The plain language is the best indicator of legislative intent, but courts should consider language in the context of the entire statute rather than read it in isolation. *United States v. Glispie*, 2020 IL 125483, ¶¶ 9-10. Courts should also "consider the reason for the law, the problem sought to be remedied, the goals to be achieved, and the consequences of construing the statute one way or another." *Id.* ¶ 10. If language is unambiguous, it should be applied as written, but courts presume that the legislature did not intend inconvenience, injustice, or absurdity to result. *Dynak*, 2020 IL 125062, ¶ 16.

¶ 19    Section 15-1509, titled "Transfer of Title and Title Acquired," specifically provides procedures for the transfer of title after confirmation of a judicial sale. 735 ILCS 5/15-1509 (West 2018). Subsection (c) bars claims after a deed is transferred following a judicial sale, providing as follows:

> "(c) *Claims Barred.* Any vesting of title by a consent foreclosure pursuant to Section 15-1402 or by deed pursuant to subsection (b) of Section 15-1509, unless otherwise specified in the judgment of foreclosure, *shall be an entire bar of (i) all claims of parties to the foreclosure* and (ii) all claims of any nonrecord claimant who is given notice of the foreclosure in accordance with paragraph (2) of subsection (c) of Section 15-1502, notwithstanding the provisions of subsection (g) of Section 2-1301 to the contrary. *Any person seeking relief from any judgment or order entered in the foreclosure in accordance with subsection (g) of Section 2-1301 of the Code of Civil Procedure may claim only an interest in the proceeds of sale*." (Emphases added and emphasis in original.) *Id.* § 15-1509(c).

¶ 20    Defendants contend that section 15-1509(c) is unambiguous and clearly bars "all claims" of parties to the foreclosure following vesting of title by delivery of the deed in a foreclosure suit, including those of the plaintiffs here. In support they cite various circumstances under which courts have applied the section 15-1509(c) claim bar. Following a judgment of foreclosure and an order confirming the judicial sale, section 15-1509(c) has been held to bar challenges to (1) orders substituting the plaintiff (see *Taylor v. Bayview Loan Servicing, LLC*, 2019 IL App (1st) 172652, ¶ 17); (2) orders confirming the judicial sale (see *id.*; *U.S. Bank National Ass'n v. Prabhakaran*, 2013 IL App (1st) 111224, ¶ 30); (3) deficiency judgments (see *Taylor*, 2019 IL App (1st) 172652, ¶ 17; *BMO Harris Bank National Ass'n v. LaRosa*, 2017 IL App (1st) 161159, ¶ 22); and (4) the

foreclosure judgment itself (see *Prabhakaran*, 2013 IL App (1st) 111224, ¶ 30). Defendants assert that plaintiffs' claims for money damages pursuant to RESPA and the Fraud Act should be similarly barred under the plain language of section 15-1509(c).

¶ 21 Plaintiffs counter that such a reading is unjust and would result in absurdities. For example, they argue that the reading urged by defendants would prohibit a bank from enforcing its rights under an entirely separate mortgage executed by the same parties. This example, however, is somewhat fanciful, as "all claims" is clearly limited to claims relating to the mortgage and property specifically subject to the foreclosure proceeding at issue.

¶ 22 Turning to the text itself, plaintiffs suggest that section 15-1509(c) limits the scope of its "all claims" language by clarifying in its last sentence that "[a]ny person seeking relief from any judgment or order entered in the foreclosure *** may claim only an interest in the proceeds of sale." 735 ILCS 5/15-1509(c) (West 2018). Plaintiffs argue that the proceeds-litigation exception to the claim bar demonstrates that the claim bar applies only to claims seeking relief from a foreclosure judgment or an order confirming a judicial sale. This less expansive reading would avoid the injustice of precluding plaintiffs from pursuing redress for the money damages they suffered due to defendants' purported RESPA and Fraud Act violations. Under plaintiffs' construction of the statute, then, the above-referenced cases *LaRosa*, *Taylor*, and *Prabhakaran* are inapplicable because plaintiffs are not in any way seeking to challenge the foreclosure judgment, the judicial sale, or a deficiency judgment. Rather, they are seeking monetary damages based on defendants' conduct during the foreclosure proceedings, pursuant to RESPA and the Fraud Act.

¶ 23 To the extent that the proceeds-litigation exception in section 15-1509(c) renders the meaning of "all claims" ambiguous, as plaintiffs argue, we consider section 15-1509(c) in the context of the entire statute to ascertain the meaning of the "all claims" bar. See *Glispie*, 2020 IL

125483, ¶¶ 9-10. The Mortgage Foreclosure Law provides that " '[f]oreclosure' means an action commenced under this Article and 'to foreclose' means to terminate legal and equitable interests in real estate pursuant to a foreclosure." 735 ILCS 5/15-1203 (West 2018). Appearing under the heading for part 14, "Methods of Terminating Mortgagor's Interest in Real Estate," section 15-1404 provides as follows:

> "Judicial Foreclosure. Except as provided in subsection (d) of Section 15-1501, *the interest in the mortgaged real estate of (i) all persons made a party in such foreclosure* and (ii) all nonrecord claimants given notice in accordance with paragraph (2) of subsection (c) of Section 15-1502, *shall be terminated by the judicial sale of the real estate*, pursuant to a judgment of foreclosure, provided the sale is confirmed in accordance with this Article." (Emphases added.) *Id.* § 15-1404.

Certainly, the contemplated termination of a mortgagor's legal and equitable interests in the real estate after a judicial sale is consistent with section 15-1509(c)'s claim bar.

¶ 24    We further consider section 15-1508, which provides a mechanism to contest a judicial sale on various grounds that may be asserted after the sale but prior to the confirmation. *Id.* § 15-1508. Subsection (b) permits a party to contest the sale on the grounds of improper notice, unconscionable sale terms, fraud sale terms, or where "*justice was otherwise not done.*" (Emphasis added.) *Id.* § 15-1508(b). Further, subsection (d-5) requires the court to set aside a sale prior to its confirmation if, upon motion, "the mortgagor proves by a preponderance of the evidence that (i) the mortgagor has applied for assistance under the Making Home Affordable Program *** and (ii) the mortgaged real estate was sold in material violation of the program's requirements for proceeding to a judicial sale." *Id.* § 15-1508(d-5). Collectively, subsections (b) and (d-5) provide a statutory remedy under which a court may set aside a judicial sale if all statutory requirements

are not met or if justice was otherwise not done. See *MidFirst Bank v. Riley*, 2018 IL App (1st) 171986, ¶ 39.

¶ 25 Considering the various provisions of the Mortgage Foreclosure Law together, we conclude that the legislature intended section 15-1509(c) to preclude all claims of parties to the foreclosure related to the mortgage or the subject property, except for claims regarding the interest in the proceeds of a judicial sale. We also observe that judgments in a foreclosure proceeding entered without subject-matter jurisdiction or personal jurisdiction over an aggrieved party are invalid and thus unshielded by section 15-1509(c). *Deutsche Bank National Trust Co. v. Brewer*, 2012 IL App (1st) 111213, ¶ 15. The asserted unfairness of this interpretation is belied by the various provisions in section 15-1508 for addressing "injustice" issues that might arise in the course of foreclosure proceedings. Indeed, we note that plaintiffs sought to file a counterclaim in the original foreclosure action, asserting breach of contract against Bayview based on Bayview's purported bad-faith refusal to negotiate the terms of its permanent loan-modification offer after plaintiffs completed the Trial Period Plan. Leave to file this counterclaim, which raised the same conduct alleged in the instant RESPA and Fraud Act actions, was denied on timeliness grounds because plaintiffs waited until 20 days before the scheduled judicial sale, and at least five months after they became aware of the facts that constituted the purported contract breach, to request leave. Plaintiffs did not appeal the trial court's ruling. We note that the proper time to raise the issues plaintiffs now seek to litigate was in fact between the judgment of foreclosure and the confirmation of the sale, as contemplated in section 15-1508. To the extent that plaintiffs did not pursue these claims as contemplated, they are claim-barred pursuant to section 15-1509(c).

¶ 26                                          III. CONCLUSION

¶ 27 For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 28    Affirmed.

---

**No. 2-19-1019**

---

| | |
|---|---|
| **Cite as:** | *Adler v. Bayview Loan Servicing, LLC*, 2020 IL App (2d) 191019 |
| | |
| **Decision Under Review:** | Appeal from the Circuit Court of Kendall County, No. 2019-L-000031; the Hon. Stephen L. Krentz, Judge, presiding. |
| | |
| **Attorneys for Appellant:** | Daniel Brown, of Main Street Attorney, LLC, of Chicago, for appellants. |
| | |
| **Attorneys for Appellee:** | James V. Noonan and Robert E. Haney, of Noonan & Lieberman, Ltd., of Chicago, for appellees. |

---