2022 IL App (2d) 210056
No. 2-21-0056
Opinion filed May 5, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| BAYVIEW LOAN SERVICING, LLC, | ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CH-845 |
| ELIZABETH R. STARKS, Individually and as Trustee of the Starks Revocable Living Trust, Dated May 10, 2016; EVERGREEN BANK GROUP, f/k/a Evergreen Private Bank; DISCOVER BANK; THE STARKS REVOCABLE LIVING TRUST, Dated May 10, 2016; UNKNOWN OWNERS; and NON RECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | Honorable Charles D. Johnson, |
| (Elizabeth R. Starks, Defendant-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court, with opinion.
Justices McLaren and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Elizabeth R. Starks defaulted on her mortgage, and the trial court entered an order of default and a judgment of foreclosure in favor of plaintiff, Bayview Loan Servicing, LLC (Bayview). Starks filed motions seeking to vacate the default judgment and for leave to file an untimely answer and counterclaims. The trial court denied those motions, as well as Starks's motion to reconsider. For the following reasons, we affirm.

¶ 2                                      I. BACKGROUND

¶ 3      Starks purchased a home secured by a mortgage. Bayview subsequently obtained the interest in the mortgage. According to her proposed countercomplaint, Starks obtained Chapter 7 bankruptcy protection in June 2018 and her debts were discharged. Bayview filed a complaint for foreclosure in July 2018, alleging Starks's default.

¶ 4      On July 19, 2019, the trial court entered an order continuing the case to July 17, 2020, "for Special Progress Call," citing "Pursuing Loan Modification" as the status of the case. One week later, on July 26, 2019, the trial court entered an order continuing the case to October 25, 2019, "for status." On October 25, 2019, the trial court entered an order continuing the case to February 7, 2020, "for status." That date was subsequently changed to February 14, 2020.

¶ 5      On February 14, 2020, the trial court entered an order of default and a judgment of foreclosure. The court noted that the redemption period would expire on May 14, 2020, and ordered the sale of Starks's home if amounts due and owing to Bayview were not paid by that date. On July 24, 2020, the trial court entered an order continuing the case to July 23, 2021, citing "Other: GSE moratorium hold" as the status of the case. On November 17, 2020, however, Starks's home was sold at a judicial sale.

¶ 6      On December 29, 2020, Starks filed an emergency motion seeking to vacate the order of default (735 ILCS 5/2-1301(e) (West 2020)), to set aside the judicial sale, and leave to file an answer and counterclaims. In the motion, Starks acknowledged that her statutory rights of redemption had expired, the home had been sold at auction, and the sale was set for confirmation on January 15, 2021. In the proposed answer, Starks alleged that Bayview was not the legal holder of the mortgage and thus had no right to foreclose. In the proposed countercomplaint, Starks alleged that, on or about July 16 or 17, 2020, agents of Bayview forcefully entered Starks's home

without legal right to do so and took personal items valued at over $1000 as well as items of personal sentimental value. Starks, with the help of counsel, was also negotiating with Bayview to obtain a deed-in-lieu of foreclosure. The proposed countercomplaint included counts alleging consumer fraud in the course of foreclosing on Starks's home, trespass to real property, trespass to chattels, conversion, invasion of privacy, breach of the mortgage contract, and unfair debt collection practices in connection with the efforts at recouping money owed under the mortgage contract. Starks sought to recover actual damages, statutory damages, and reasonable attorney fees.

¶ 7     On January 7, 2021, the trial court entered an order denying both the motion to vacate the foreclosure judgment and leave to file an answer and counterclaims. The order further stated, "This ruling is without prejudice as to Defendant filing any separate claims that she may seek to file and does not operate as a bar to any such filings." On the same day, Bayview filed a motion for an order approving the sale.

¶ 8     On January 14, 2021, Starks filed an emergency motion to reconsider the trial court's January 7, 2021, order. Starks noted that this court's opinion in *Adler v. Bayview Loan Servicing, LLC*, 2020 IL App (2d) 191019, had been filed on the same day as her December 29, 2020, motion. Starks argued that, in light of *Adler*, denying her leave to file counterclaims would forever bar her from litigating those claims. She further argued,

> "[Starks's] delay in bringing forth her claims is attributable, at least in part: due to the Plaintiff's slow walking of her mitigation efforts in her attempt to enter into a deed in lieu of foreclosure. Moreover, part of the delay of the filing of [Starks's] motion was the result of the investigatory steps her counsels undertook to properly identify the [*sic*] both the claims and defendants and entities responsible for the action alleged in her complaint.

Furthermore, it was not always clear that her claims would necessarily have to be filed in the instant foreclosure action instead of an independent claim as the *Adler* court has held." Starks added that, "in order to preserve her right to hold the culpable parties accountable, [she] must be given an opportunity to prosecute those claims *in the instant action*." (Emphasis added.) The trial court denied the motion to reconsider and entered an order confirming the sale.

¶ 9    Starks timely appealed. In lieu of a report of proceedings, the parties filed an agreed statement of facts, pursuant to Illinois Supreme Court Rule 323(d) (eff. July 1, 2017). They state:

"1. On July 17, 2018, a Complaint to Foreclose Mortgage was filed by Plaintiff BAYVIEW LOAN SERVICING, LLC, against Defendant ELIZABETH R. STARKS, and other parties.

2. On February 14, 2020, the trial court entered default judgment for foreclosure and sale.

3. On December 29, 2020, Ms. Starks, through counsel, filed her Motion to Vacate Non-Final Order requesting that the trial court vacate the default judgment, set-aside the judicial sale, stay any confirmation hearings, and grant her leave to file her proposed answer, counterclaims, and third-party claims.

4. Specifically, Ms. Starks sought to bring counter-claims against Plaintiff Community Loan Servicing, LLC f/k/a Bayview Loan Servicing, LLC, and other parties, related to alleged violations of the Fair Debt Collection Practices Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, Trespass to Real Property and Chattels, Conversion, Invasion of Privacy and Breach of Contract.

5. The Counter-Claims were brought not only against Community Loan Servicing, LLC f/k/a Bayview Loan Servicing, LLC but also Mortgage Contracting Services, LLC, the Federal National Mortgage Association, and John Does 1-10.

6. The proposed Counter-Claims were attached as an exhibit to Defendant Starks' Motion to Vacate and for Leave to File Counter-Claims, when presented to the court.

7. On January 7, 2021, the trial court heard argument and denied Defendant's Motion. Among other arguments, Plaintiff asserted *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, precluded any relief Defendant sought. The trial court entered an order denying the requested relief, but specifically stated that 'this ruling is without prejudice as to Defendant filing any separate claims that she may seek to file and does not operate as a bar to any such filings.'

8. On January 14, 2021, Defendant Starks filed her Emergency Motion to Reconsider the January 7, 2021 Order raising a very recent Second District Appellate Ruling that was not considered at the time of the January 7, 2021 hearing which directly impacted whether Ms. Starks could pursue her claim(s) in any other court: *Ronald Adler v. Bayview Loan Servicing, LLC*, 2020 IL App. (2d) 191019 (Dec. 29, 2020).

9. On January 15, 2021, after a brief argument, the trial court entered an order denying Defendant's Motion to Reconsider the Order of January [7], 2021 and simultaneously entered an order granting Plaintiff's Motion to Confirm Judicial Sale.

10. At the hearing the parties restated their arguments raised at the January 7, 2021 hearing, but counsel for Defendant raised the *Adler* decision. Counsel for Plaintiff argued that since *Adler* had been decided prior to the January [7], 2021, [(order,)] it was not 'new' case law, and thus, not properly brought before the court as the basis for Defendant's

Motion to Reconsider the January 7, 2021 order. Counsel for Plaintiff also argued that the underlying trial court in the *Adler* case, ruled that the defendant in that matter untimely filed its Motion for Leave to file counterclaims analogizing the case at bar in how between five to six months had passed from the alleged occurrence before Defendant's Motion to Vacate was filed. The trial court ultimately ruled that the January 7, 2021 Order was intended to be clear, that the trial court made no findings concerning the merits of Defendant's proposed counterclaims or any forum in which she seeks to present them. The trial court stated the ruling in the *Adler* case supported its denial of the January 7, 2020, Motion to Vacate.[1] The trial court further stated that the fact that the Second District Court of Appeals, in the *Adler* case, had ostensibly foreclosed on her ability to prosecute her claims for monetary relief in any other court, was not the trial court's doing, so the Motion to Vacate was properly denied on January 7, 2021.

11. No court reporter was present for either the January 7, 2021, or January 15, 2021, hearings and the trial court made the rulings orally and issued no written opinion expanding on the orders issued.

12. A Notice of Appeal was subsequently filed with the Circuit Court on February 5, 2021."

¶ 10                                   II. ANALYSIS

¶ 11    Starks argues that the trial court abused its discretion by denying her motion to vacate the default judgment of foreclosure and for leave to file counterclaims, as well as her motion to reconsider that denial. Further, the judgments should be reversed because they resulted in extraordinary injustice. In the alternative, Starks asks that we reconsider our holding in *Adler*.

---

[1] The motion was filed December 29, 2020.

¶ 12    Preliminarily, Starks requests that we take judicial notice of three documents. Courts of review "may take judicial notice of matters that are readily verifiable from sources of indisputable accuracy." *People v. Mata*, 217 Ill. 2d 535, 539 (2005). This includes public records. *City of Centralia v. Garland*, 2019 IL App (5th) 180439, ¶ 10. Judicial notice may not be used, however, to introduce new evidentiary material not considered by the trier of fact. *People v. Cline*, 2022 IL 126383, ¶ 32.

¶ 13    The first document is a Fannie Mae lender letter regarding the impact of COVID-19 on servicing by federally backed mortgage loans servicers. Fannie Mae, Lender Letter LL-2020-02 (Dec. 9, 2020), https://singlefamily.fanniemae.com/media/22261/display [https://perma.cc/J9JQ-BDHA]. Fannie Mae, officially the Federal National Mortgage Association, is a government-sponsored entity (GSE) that "provide[s] liquidity and stability to the national housing market by, among other things, purchasing mortgage loans from, and offering financing to, private lenders." *Collins v. Yellen*, ___ U.S. ___, ___, 141 S. Ct. 1761, 1803 (2021) (Sotomayor, J., concurring in part and dissenting in part, joined by Breyer, J.). The lender letter is addressed, "To: All Fannie Mae Single-Family Servicers[;] Impact of COVID-19 on Servicing" and states, "The policies in this Lender Letter are effective immediately and are effective until Fannie Mae provides further notice, unless otherwise stated." Fannie Mae, *supra*, at 1. The letter, initially published in March 2020, instructed loan servicers not to allow foreclosure sales within the following 60 days. Subsequent updates extended the bar on "foreclosure-related activities" on April 8, May 14, June 24, August 27, and December 9, 2020. The suspension extended through January 31, 2021. The letter is available on Fannie Mae's official website. Bayview does not dispute that the letter is readily verifiable from a source of indisputable accuracy, and the record suggests that the trial

court considered the letter when it continued the case in July 2020. Accordingly, we take judicial notice of the letter.

¶ 14    Starks also requests that we take judicial notice of her complaint against Bayview in a standalone case (Starks v. Community Loan Servicing, LLC, No. 21-L-500 (Cir. Ct. Lake County)) and Bayview's motion to dismiss in that case. Those documents are matters of public record of which we also take judicial notice. The complaint, filed on July 6, 2021, makes the same allegations as Starks's proposed counterclaims. Bayview's motion to dismiss alleges that Starks's claims are barred by section 15-1509(c) of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1509(c) (West 2020)), pursuant to *Adler*.

¶ 15    With the above in mind, we now consider whether the trial court abused its discretion in denying Starks's motion to vacate the foreclosure judgment and for leave to file an answer and counterclaims, as well as her reconsideration motion. Section 2-1301(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1301(e) (West 2020)) states: "The court may in its discretion, before final order or judgment, set aside any default, and may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable." In a foreclosure action, the final order is the order confirming the sale.    *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115549, ¶ 12. "Accordingly, a motion to vacate a default judgment of foreclosure brought before the order confirming the sale or within 30 days thereafter would be timely." *Id.* Under section 2-1301(e), the overriding consideration is " 'whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits.' [Citation.]" *McCluskey*, 2013 IL 115469, ¶ 16. The borrower need not show a meritorious defense, but "[t]raditional considerations of due diligence and whether there is a meritorious defense will remain relevant in

the court's consideration of whether substantial justice has been done between the parties and whether it is reasonable to vacate the default." *Id.* ¶¶ 16, 27. All events leading up to the default judgment are relevant as to whether substantial justice has been done. *In re Haley D.*, 2011 IL 110886, ¶ 72. "[U]ntil a motion to confirm the judicial sale is filed, a borrower may seek to vacate a default judgment of foreclosure under the standards set forth in section 2-1301(e)." *McCluskey*, 2013 IL 115469, ¶ 27. After a motion to confirm the judicial sale is filed, however, the borrower may seek to set aside a default judgment of foreclosure *only* by filing a motion under section 15-1508(b) of the Foreclosure Law. *Id.*; 735 ILCS 5/15-1508(b) (West 2020) ("Upon motion and notice ***, the court shall conduct a hearing to confirm the sale. Unless the court finds that *** justice was otherwise not done, the court shall then enter an order confirming the sale.").

¶ 16      Starks presents no basis for vacating the default judgment, and we observe that her personal obligations were discharged in bankruptcy. Nor does Starks make any argument as to how the trial court's refusal to grant her motion to vacate the default judgment *itself* would result in substantial injustice. Rather, she glosses over these procedural hurdles and instead argues that denying leave to file counterclaims would cause injustice. Indeed, she concedes that "[v]acating the default would have served only to allow Starks to bring her counterclaims and avoid the permanent claims bar that resulted solely from new interpretations of Section 15-1509(c)." See 735 ILCS 5/15-1509(c) (West 2020) ("Any vesting of title *** by deed pursuant to subsection (b) of Section 15-1509, unless otherwise specified in the judgment of foreclosure, shall be an entire bar of *** all claims of parties to the foreclosure ***."). Appellants are required to support arguments with citations to relevant authority and portions of the record, and "[p]oints not argued are forfeited." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Accordingly, Starks has forfeited her argument that the trial court's denial of her motion to vacate the default judgment resulted in substantial injustice. By way of her

concession, Starks further concedes that vacating the default judgment would be a prerequisite to filing her counterclaims; thus the trial court properly denied her motion for leave to file counterclaims.

¶ 17     Notwithstanding Starks's concessions, we would conclude that the trial court's order did not result in substantial injustice for two reasons. First, Starks failed to file an answer to Bayview's complaint for foreclosure. The Code provides that any counterclaim "shall be a part of the answer" (735 ILCS 5/2-608(b) (West 2020)) and "[a]t any time before final judgment amendments may be allowed on just and reasonable terms" (*id.* § 2-616(a)), including to add a cause of action. Section 2-616 of the Code reflects a policy for liberal amendment of pleadings. *Scentura Creations, Inc. v. Long*, 325 Ill. App. 3d 62, 72 (2001). Had Starks timely filed an answer, section 2-616 would have allowed her to seek leave to amend the same to add counterclaims. Instead, Starks sought leave to vacate the default judgment and sale, file an untimely answer, and bring counterclaims. The failure to timely file an answer under these facts supports a finding that Stark did not exercise due diligence.

¶ 18     Second, Starks chose to seek leave to file counterclaims—and to file a motion to reconsider—rather than file a separate action. After receiving notice that Bayview had sold her home in November 2020, Starks filed her motion to vacate the default judgment on December 29, 2020, which the trial court denied on January 7, 2021. She then filed her motion to reconsider on January 14, 2021, which the trial court also denied. Counterclaims are permissive rather than mandatory in Illinois. *Tebbens v. Levin & Conde*, 2018 IL App (1st) 170777, ¶ 45; see also 735 ILCS 5/2-608(a) (West 2020) ("Any claim by one or more defendants against one or more plaintiffs *** *may* be pleaded as a cross claim in any action, and when so pleaded shall be called a counterclaim." (Emphasis added.)); *id.* § 2-614 ("[T]he defendant *may* set up in his or her answer

any and all cross claims whatever, *** which shall be designated counterclaims." (Emphasis added.)). Thus, a defendant generally may bring a claim as a counterclaim or in a separate action, except to the extent that *res judicata* would bar the claim. *Tebbens*, 2018 IL App (1st) 170777, ¶ 45. The trial court's ruling could not have resulted in substantial injustice, because Starks had an alternate avenue to pursue her claims without needing to request that (1) the trial court vacate a prior order and (2) the trial court grant leave to file counterclaims.

¶ 19    Starks counters, however, that she was without an alternative avenue to pursue her claims, given this court's decision in *Adler*, 2020 IL App (2d) 191019, and that this rendered the trial court's bar of her counterclaims a substantial injustice. In *Adler*, we reviewed a trial court's dismissal of claims, pursuant to section 15-1509(c) of the Foreclosure Law, that the defendants had engaged in misconduct during foreclosure proceedings pertaining to the plaintiffs homeowners' efforts to obtain a permanent loan-modification offer following their mortgage default. The plaintiffs filed motions to stay the judicial sale of their home and for leave to file counterclaims in the foreclosure court, but the trial court denied the motions as untimely. The sale was confirmed, the plaintiffs brought their claims in a new action, and the trial court dismissed those claims under section 15-1509(c). We affirmed, holding that "the legislature intended section 15-1509(c) to preclude all claims of parties to the foreclosure *related to the mortgage or the subject property*, except for claims regarding the interest in the proceeds of a judicial sale." (Emphasis added.) *Adler*, 2020 IL App (2d) 191019, ¶ 25. Starks contends that, because of *Adler*, the claims she sought to pursue in the proposed counterclaims will be forever barred and, therefore, the trial court's denial of her motion to reconsider resulted in substantial injustice.

¶ 20    In support of her substantial injustice argument, Starks asserts that *Adler* improperly expanded the scope of the section 15-1509(c) claims bar because it "drastically limit[s] the rights

and remedies of mortgage borrowers who are abused, defrauded, or otherwise harmed during the pendency of a foreclosure case." She contends that, under *Adler*, foreclosure plaintiffs "will receive an automatic 'get out of jail free card' for any and all misconduct" that occurs before or during the foreclosure proceedings, including misconduct that is not discovered until after the confirmation of a foreclosure sale. So characterized, Starks claims that our interpretation of the section 15-1509(c) claims bar is incorrect, but she provides no alternative interpretation, except to argue, as the plaintiffs did in *Adler*, that prior decisions of the Illinois Appellate Court support a narrower interpretation of the section 15-1509(c) claims bar.

¶ 21    We decline to reconsider *Adler* in that Starks misinterprets the extent of its holding. In its order denying leave to file counterclaims, the trial court explicitly stated, "This ruling is *without prejudice* as to Defendant filing any separate claims that she may seek to file and *does not operate as a bar to any such filings*." (Emphases added.) This was entirely consistent with our conclusion in *Adler* that "the legislature intended section 15-1509(c) to preclude all claims of parties to the foreclosure *related to the mortgage or the subject property*, except for claims regarding the interest in the proceeds of a judicial sale." (Emphasis added.) *Adler*, 2020 IL App (2d) 191019, ¶ 25; 735 ILCS 5/15-1509(c) (West 2018). Nothing in this language supports the application of section 15-1509(c) to bar claims such as those involving intentional torts and damages unrelated to the mortgage contract.[2] See *Adler*, 2020 IL App (2d) 191019, ¶ 18 ("[C]ourts presume that the

---

[2] We note that Starks's proposed counterclaims included claims of consumer fraud in the course of foreclosing on Starks's home, breach of the mortgage contract, and unfair debt collection practices in connection with the efforts at recouping money owed under the mortgage contract. Starks develops no argument on appeal that these claims were unrelated to the mortgage contract

legislature did not intend inconvenience, injustice, or absurdity to result."). To the extent otherwise procedurally proper, Starks is free to pursue tort claims unrelated to the mortgage contract or the subject property.

¶ 22    More fundamentally, Starks's motion to reconsider was appropriately denied because it was procedurally improper. Starks filed her motion to reconsider *after* Bayview filed a motion to confirm the judicial sale, again under section 2-1301(e) of the Code, rather than filing a motion to delay confirmation of the judicial sale under section 5-1508(b) of the Foreclosure Law. Starks was required to file a motion under section 5-1508(b). See *McCluskey*, 2013 IL 115469, ¶ 27.

¶ 23    Starks nevertheless asks *this* court to vacate the order confirming the judicial sale pursuant to section 15-1508(b) of the Foreclosure Law because "justice was not otherwise done." 735 ILCS 5/15-1508(b)(iv) (West 2020). But section 15-1508(b) merely authorizes a court to delay entry of an order to confirm a judicial sale, not to vacate such an order. *Id.* Regardless, Starks raises this argument for the first time on appeal, and thus it is forfeited. See *Deutsche Bank National Trust Co. v. Estate of Schoenberg*, 2018 IL App (1st) 160871, ¶ 29 ("Issues not raised in the circuit court are forfeited on appeal.").

¶ 24    Finally, Starks argues that the trial court's orders were arbitrary and unreasonable because the foreclosure process should have been halted pursuant to the Fannie Mae lender letter, which directed affected lenders to temporarily suspend all foreclosure-related activities. We disagree.

---

for purposes of section 1509(c), and we find that she has forfeited any arguments related to them. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 25    Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (15 U.S.C. § 9001 *et seq.* (Supp. II 2018)) to provide relief during the COVID-19 pandemic. The CARES Act prohibited servicers of federally backed mortgage loans from, *inter alia*, executing foreclosure sales during the 60-day period beginning on March 18, 2020. 15 U.S.C. § 9056(c)(2) (Supp. II 2018). The statutory moratorium expired by its own terms on May 17, 2020. See *id.* Nevertheless, Fannie Mae continued to instruct servicers of federally backed mortgage loans to suspend foreclosure-related activities. See *supra* ¶ 13.

¶ 26    Bayview filed the foreclosure complaint in July 2018, Starks failed to file an answer, and the trial court entered a default judgment in February 2020. All of these events occurred before Fannie Mae disseminated its lender letter. While Starks may have hoped that the case would be on hold following the trial court's July 24, 2020, order continuing the case to July 23, 2021, which cited the "GSE Moratorium hold" as the reason, her expectations do not render the court's actions arbitrary or unreasonable. Starks acquiesced in the foreclosure of her home when she declined to file an answer. Nor is there evidence that Starks argued before the trial court that failing to grant her motion to vacate the default judgment (or confirming the judicial sale) would be unjust because of the Fannie Mae policy in effect. Indeed, Starks's motion to vacate and her motion to reconsider made mention of neither the Fannie Mae policy nor the effect the discharge in bankruptcy had on the policy. The trial court's failure to rule on Starks's motions in accordance with the Fannie Mae policy cannot be considered arbitrary or unreasonable where Starks never presented that argument to the court. Starks thus forfeits this argument on appeal. See *Schoenberg*, 2018 IL App (1st) 160871, ¶ 29. By confirming the judicial sale, the trial court properly resolved a case that had been open for 2½ years.

¶ 27                                        III. CONCLUSION

¶ 28    The judgment of the circuit court of Lake County is affirmed.

¶ 29    Affirmed.

---

**No. 2-21-0056**

---

| | |
|---|---|
| **Cite as:** | *Bayview Loan Servicing, LLC v. Starks*, 2022 IL App (2d) 210056 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 18-CH-845; the Hon. Charles D. Johnson, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Daniel Brown, of Main Street Attorney, LLC, and Bryan Paul Thompson, of Chicago Consumer Law Center, P.C., both of Chicago, and Robert J. Tomei Jr., of Johnston Tomei Lenczycki & Goldberg, LLC, of Libertyville, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Jonathan D. Nusgart, Michael J. Weik, and Craig C. Smith, of Smith & Weik, LLC, of Oak Park, for appellee. |

---